304 So.2d 720 (1974)
Louis J. BRAQUET et al.
v.
The ADMINISTRATORS OF the TULANE EDUCATIONAL FUND.
No. 6231.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1974.
On Application for Rehearing November 7, 1974.
Concurring Opinion on Denial of Rehearing December 2, 1974.
Writ Refused December 20, 1974.
Windhorst, Heisler, DeLaup & Wysocki, Henry L. Klein, Frederick P. Heisler, New Orleans, for plaintiffs-appellants.
Chaffe, McCall, Phillips, Toler & Sarpy, C. Manly Horton, Jr., V. Gerald Dean, New Orleans, for defendant-appellee.
Before LEMMON and STOULIG, JJ., and BOURG, J., Pro Tem.
STOULIG, Judge.
Plaintiffs, the collateral relatives and would-be intestate heirs of James Mitchell Rogers, instituted this suit to nullify a donation mortis causa to defendant, the Administrators of the Tulane Educational Fund (the Board), alleging the donee failed to fulfill the condition imposed by the testator on the legacy, i. e., the building of a chapel memorializing decedent's late sister Myra Clare Rogers. Defendant, seized of all the estate assets in 1959, asserted in its answer it made some effort to begin construction during the 13 years that *721 elapsed between decedent's death and the filing of this suit. The Rogers will imposed no time limit for construction, thus the primary question before us is whether Tulane must return the legacy for failure to meet the condition of the onerous donation within a reasonable time.
The trial court dismissed plaintiffs' suit. In written reasons, after finding Tulane's efforts to fulfill its obligation imposed by the decedent unproductive and unreasonable, the trial judge granted defendant an additional 18 months to complete the chapel from the date this judgment becomes final. In so doing, he explained he was guided by the testator's expressed wish to have a chapel built on the Newcomb campus as a lasting monument to his sister. In effect, he found the delays unreasonable and gave the legatee a deadline within which to perform. Plaintiffs have appealed.
Decedent's sister served on the Newcomb College faculty from 1900 until her death in 1932. James Rogers, obviously devoted to his sister during her life and to her memory thereafter, expected the Tulane-Newcomb community to fund and erect a memorial chapel, but this never materialized. Therefore, he left his entire estate for this purpose. His will, dated July 9, 1954, contained this bequest:
"I leave my estate existing at the date of my death to the Administrators of the Tulane Educational Fund for the construction of a non-sectarian chapel on the campus of Newcomb College of Tulane University. This chapel, which shall be of such size and design as to serve the needs of the University, shall be known forever and marked as the Myra Clare Rogers Memorial Chapel, and is given by me to serve as an everlasting memorial of her life and service to her community as a member of the faculty of Newcomb College."
Mr. Rogers knew his estate which he estimated at $150,000 would not be sufficient to build a chapel because he was advised by Mr. Clifford Favrot, a member of the Board, the cost would exceed $300,000. Mr. Rogers then expressed the opinion that Tulane was a wealthy institution and it could make up the difference. From past experience and his knowledge of the university's policy of unrestricted funds for its development program, Mr. Favrot knew Tulane would not help fund the chapel but he did not so inform Mr. Roger.
Mr. Rogers died March 14, 1959 and defendant was issued letters testamentary ten days later when his will was probated. An inventory taken April 13, 1959 listed real property at $60,000 and movables at $76,333.54. Before it could sell the real estate located in Louisiana, the Board successfully sued to have a codicil invalidated that prohibited alienation of the real estate. That litigation became final April 19, 1962 when the Supreme Court refused an application for a writ of certiorari from this court's decision in Succession of Rogers, 138 So.2d 251 (La.App.1962).
Tulane sold the real estate in 1962 and 1963 for $55,000. Dr. Clarence Scheps, then university comptroller, testified there was $168,200 available for construction of the chapel. This included Rogers' net estate, real and personal; insurance policy proceeds of $20,000 with Newcomb College the named beneficiary but which the defendant decided to dedicate to the Rogers Chapel fund; and interest earned by these funds.
It is clear from the record that these funds were adequate to finance construction of a chapel. In fact the chapel Tulane now proposes to build to satisfy the condition of the Rogers legacy could have been constructed in 1961 for $150,000.[1] Edmond Bendernagel, resident architect at Tulane University, testified that plans *722 were being studied at the time of the trial to construct an 8,000 square foot chapel for $230,000. This does not include furnishing and landscaping. That same structure could have been erected for $150,000 projected Mr. Bendernagel based on an F. W. Donnel building cost calculator. This reference reflects construction has increased by 53.2 percent during this ten-year interval.
There was some indecisive action by the university officials between 1960 and 1963, including discussions, tentative sketches and expressions of an intent to solicit more funds to add to the chapel project. However the record does not support the university's position that the lack of funds was the major reason why the chapel had not been built during the past 13 years. It does reflect that even as late as March of 1971 the Board of Administrators voted to: "* * * deny the use for this project of any Tulane University funds other than the Rogers bequest and the Newcomb chapel fund, augmented by a solicitation that would not detract from general fundraising efforts."
What delayed and deferred construction for so long was that Dr. Herbert Longenecker, Tulane president since September 1960, wished to use the Rogers legacy as partial funding for a $2.5 million religious center which would include a chapel. Dr. Longenecker testified a university chapel requires more than a liturgical worship center to serve the needs of a university. He expressed the view that religious facilities on campus must include inter alia classrooms for study, an area for student counseling, a reading room-library in order to meet the student's religious requirements in a relevant way.
Thus the first few years of planning to fulfill the condition of the Rogers bequest were unrealistic because President Longenecker was designing a $2.5 million project on a $168,000 budget. While there is testimony he attempted to solicit the balance from another source, his efforts to generate added funds were unfruitful. After this first round of discussions, the chapel remained dormant until 1970 and at that time Tulane began to consider construction more within the range of what the Rogers fund had to spend. This second series of meetings, discussions and studies underway by the Board and several committees has produced nothing concrete in more than two years. The only affirmative decision reached is the chapel will be built near Newcomb Hall on the same site selected by the study groups considering the problem in the early 1960s.
From these facts, we conclude defendant failed to fulfill the condition upon which it was given the entire estate of decedent. The will specified no time for performance; therefore, under our decision in Bowers v. Roman Cath. Ch. of Diocese of New Orleans, 264 So.2d 329 (La.App. 1972), we must determine whether a reasonable time for fulfilling the condition has elapsed. In the early planning stages, Tulane's president sponsored construction of a religious center geared to modern campus ministry that included numerous features beside the traditional liturgical worship center. As commendable as this design was, we find it was not what the testator had in mind when he wrote his will. The primary purpose for giving the chapel was to memorialize Myra Clare Rogers, not to provide a building to meet the religious needs of the contemporary student. It is apparent from the record Dr. Longenecker's proposed religious center was the factor that prevented construction of the traditional chapel in the early 1960s at a cost that could have been supplied by the Rogers fund in 1963. An additional ten-year delay before building the chapel similar to the one the defendant would not consider in 1963 is unreasonable.
In summary, it affirmatively appears from the record that during the 1930s, Douglas Freret was appointed the architect for a proposed Newcomb Chapel. In 1960 after the death of Mr. Rogers, Freret was *723 notified that the chapel would definitely be constructed. Apparently all further consideration of the chapel construction was held in abeyance while an attempt was made to fund a $2.5 million University Religion Complex. In October 1970 the University Senate Committee on Physical Facilities was charged with formulating guidance plans for the architect. Mr. Freret, working with this committee, submitted various designs and concepts for the Rogers chapel in November and December 1971 and in April, August, November and December 1972; however, no formal plans were ever finalized. Subsequently Mr. Freret died and Mr. John Desmond was appointed to succeed him. As of August 15, 1973 (eight months after the institution of this suit) only an isometric site study represents the latest effort toward developing a plan for the Rogers chapel. No definite plan has been accepted by the Board, nor does there appear to be an consensus of opinion as to a specific design for the chapel. We find the delay of 13 years is unjustified, unwarranted, inexcusable, and totally unreasonable. It has produced the effect of thwarting the intention of the testator to have the chapel built during the lifetime of his deceased sister's contemporaries.
If reasonableness in execution of the condition imposed on the legacy were the only factor to be considered, we would order the executor to place the plaintiffs in possession and declare the legacy revoked for Tulane's failure to fulfill the condition. However, it is inescapable from reviewing the record that the testator's paramount desire was to build an "everlasting" memorial to the sister to whom he was so devoted.[2]
LSA-C.C. art. 1712 charges us with the responsibility of ascertaining the will of the testator and to give it effect where possible. Therefore, while we conclude the test of reasonable execution under Bowers was not met, we think the mandate of C.C. art. 1712 must be given paramount consideration in the instant case. We will not declare the legacy revoked.
Because defendant has impeded performance of the condition and has produced no concrete evidence that plans for construction have been finalized, we cannot agree with the time limit set by the trial judge for beginning construction. This project has been studied and committed and restudied sufficiently so that defendant should be able to perform without further delay the condition of the legacy if it intends to do so. We conclude the defendant is obligated to commence construction of the chapel within 12 months from the time this matter becomes final. If the project is not completed within 24 months from the date this judgment becomes final, the executors at that time should render an accounting to plaintiffs herein and send them in possession of the Rogers estate and all interest earned by its investment over the years.
For the reasons assigned, the judgment appealed from is affirmed insofar as it denied plaintiff's petition to have the legacy to the defendant revoked immediately for nonperformance of the condition attached to its acceptance and is amended to order *724 defendant to complete construction of the chapel within 24 months of the time this judgment becomes final or to take steps to place the plaintiffs herein in possession of the estate if the chapel has not been completed within the time allotted. Defendant is to pay all costs of this litigation.
Amended and affirmed.

ON APPLICATION FOR REHEARING
PER CURIAM.
We granted Tulane's application for rehearing to consider the time limits imposed by us for completion of construction.
Tulane urges that our original judgment ordering complete construction of the chapel within 24 months is harsh, because of the possibility of labor strikes, material shortages, catastrophes, or other factors beyond Tulane's control. We agree.
Accordingly, our original judgment is reinstated, but amended to require completion of construction within 24 months, except for delays caused by circumstances beyond Tulane's control.
Original Judgment amended and reinstated, as amended.
STOULIG, J., dissents.
LEMMON, Judge (concurring in denial of rehearing).
Plaintiffs' application for rehearing contends that once the court finds Tulane failed to carry out the obligations imposed by the onerous donation within a reasonable time, the court cannot give the donee a second chance, but can only declare the donation revoked for nonperformance.
Our opinion held that Tulane had not performed within a reasonable time, but that additional time should be granted in view of the testator's paramount desire to build a memorial to his sister. I believe we erred in taking this approach.
The determination of "reasonable time" depends on all of the facts and circumstances surrounding the donation. In the present case the testator's paramount desire should be considered as one of the factors in determining "reasonable time"; it is not proper in my opinion to determine that Tulane did not perform within an otherwise reasonable time, but that failure to perform timely should be excused because of the testator's overriding wishes.
The testator's sister died in 1932, some 22 years before he wrote his will. The onerous donation did not contain any time limit, a strong indication the testator did not intend to require forthwith performance.
After the testator died in 1959, litigation over the codicil created an unsettled situation until 1962. Thereafter, Tulane's hopes to include the chapel in a multi-purpose religious center was a reasonable cause for deferring planning of an individual chapel, until it became obvious that funding for the center could not be obtained. Then, over a period of approximately five years, Tulane failed to proceed with any measurable diligence. However, in 1970 planning was revived and proceeded reasonably, particularly in view of the acknowledged fact that use of any portion of Tulane's limited campus grounds is a momentous decision requiring careful planning and evaluation. Although again delayed by the death of the architect, Tulane had at the time of filing of this suit selected the site and was apparently proceeding through the committee and the new architect toward final design and construction.
Tulane admittedly did not proceed after the testator's death with all deliberate speed. Nevertheless, there is no indication that the testator strongly desired for Tulane to do so or that he would have preferred his estate to go to his collateral relatives if construction of the memorial was delayed and even temporarily shelved during the time following his death.
*725 In view of the testator's tremendous affection for his long-deceased sister and his desire to leave his entire estate to build a memorial to her, I would hesitate to thwart his fondest wishes unless delays or inaction by Tulane constituted apparent abandonment of the project. The record does not support such a conclusion. I would hold plaintiffs failed to prove a reasonable time had elapsed within which the condition should have been fulfilled under penalty of revocation for failure to meet the condition.
NOTES
[1] A Tulane University financial and statistical profile was distributed on January 11, 1961, which reflected that the chapel was the eleventh and last ranking in priority of objectives of the university and that construction was scheduled to begin in 1962 at a cost of $150,000.
[2] In his will the testator expressed the inscription he desired to be placed on the memorial plaque:

"I would like for a permanent plaque to be placed in the said Chapel indicating that the chapel is given in memory of Myra Clare Rogers, who was born on September 4, 1874, and died on May 30, 1932; who received the degrees of Bachelor of Science (Newcomb College) in 1896 and Master of Arts in 1898 from Tulane University, and the degree of Doctor of Philosophy in 1928 from the University of Chicago; who in 1900 became an instructor in Latin in the Newcomb High School and later served as its principal until it was discontinued by the College in 1921 when she became Assistant Professor of Latin at Newcomb College in which position she served with grace and scholarly distinction until her death in 1932, and represented the tradition and qualities that have characterized the finest qualities of womanhood which the College has exemplified; and that the Chapel is given in her memory by her devoted Brother, James Mitchell Rogers."