986 So.2d 47 (2008)
Parma Matthis HOWARD and Jane Matthis Smith
v.
ADMINISTRATORS OF the TULANE EDUCATIONAL FUND.
No. 2007-C-2224.
Supreme Court of Louisiana.
July 1, 2008.
*49 Simon, Peragine, Smith & Redfearn, Daniel James Caruso, James Augustus Burton, John Fielding Shreves, Shawn Louise Holahan, New Orleans, for applicant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Edward Hart Bergin, Genevieve Marie Hartel, New Orleans; Stone, Pigman, Walther & Wittmann, Phillip A. Wittmann, New Orleans, for respondent.
Winifred Margaret Delery, New Orleans, for amici curiae, Winifred Kelly, Winifred Kelly Delery, Winifred M. Delery, Oliver S. Delery and John F. Hills.
Gino J. Rendeiro, New Orleans, for amici curiae, Jane Pringle Seal and Albert Baldwin Pringle.
Shelly R. Hammond Provosty, for amici curiae, Donors of Randolph-Macon Woman's College and Future of Newcomb College Inc.
Dennis Hull Blumer, Ada Meloy and Michael H. Rubin, Baton Rouge, for amici curiae, American Council on Education, Association of American Universities, National Association of Independent Colleges and Universities, American Association of Community Colleges, Association of Jesuit Colleges and Universities, National Association of State Universities, Land-Grant Colleges and American Association of State Colleges and Universities.
Brooke Duncan, III, New Orleans, for amici curiae, Louisiana Association of Independent *50 Colleges & Universities and Loyola University New Orleans
Harry Alston Johnson, III and Thomas K. Hyatt, for amicus curiae, Association of Govering Boards of Universities and Colleges.
KNOLL, Justice.
This writ concerns standing to enforce the terms of alleged conditional gifts long after the death of the donor, Josephine Louise LeMonnier Newcomb ("Mrs. Newcomb"), and acceptance by the donee, the Administrators of the Tulane Educational Fund ("Tulane Board"). The pretrial posture of this case presents the interesting res nova issues of whether Louisiana law allows such an action and whether a non-legatee, would-be heir[1] has standing to file suit for injunctive relief on behalf of a donor/testator to enforce alleged conditional donations inter vivos and/or mortis causa.
The plaintiffs, Parma Matthis Howard and Jane Matthis Smith, alleged heirs of Mrs. Newcomb, raised this issue in their petition for preliminary injunction, permanent injunction, and declaratory judgment filed in the district court, seeking to enjoin the abolishment of the H. Sophie Newcomb Memorial College ("Newcomb College") in Tulane University, which was established and maintained initially through the monetary donations of Mrs. Newcomb. Before filing its answer, the Tulane Board filed various exceptions, including a peremptory exception of no right of action. The district court denied the plaintiffs' petition for preliminary injunction after a hearing, but did not rule on any of the exceptions. The plaintiffs appealed to the Court of Appeal, Fourth Circuit, which in effect dismissed the action sua sponte based on the peremptory exception raising the objection of no right of action. In plaintiffs' writ application to this Court, we found error in the court of appeal's analysis of the exception of no right of action and granted certiorari. Howard v. Administrators of Tulane Educational Fund, 07-2224 (La.2/22/08), 976 So.2d 1275. After an in-depth study of our Civil Code and civilian tradition, we find Louisiana law grants a would-be heir or legatee standing to enforce a condition of a donation. Therefore, we vacate and set aside the judgment of the court of appeal, sustain the exception of no right of action, and remand this case to the district court to allow the plaintiffs to amend their petition to more accurately establish their standing as would-be heirs of Mrs. Newcomb, if they can.

FACTS AND PROCEDURAL HISTORY
This civil case originated with a petition for preliminary injunction, permanent injunction, and declaratory judgment filed by plaintiffs, as alleged collateral heirs of Mrs. Newcomb, in Civil District Court for the Parish of Orleans on May 16, 2006, naming as defendant, the Tulane Board. *51 In their petition, plaintiffs alleged that by letter dated October 11, 1886, Mrs. Newcomb donated $100,000 to the Tulane Board "for the clear and explicit purpose of establishing a separate college for women in honor of her deceased daughter, H. Sophie Newcomb." The letter provided, in pertinent part:
In pursuance of a long cherished design to establish an appropriate memorial of my beloved daughter H. Sophie Newcomb, deceased, I have determined... to entrust to your Board the execution of my design.
Feeling a deep personal sympathy with the people of New Orleans, and a strong desire to advance the cause of female education in Louisiana, and believing also that I shall find in the Board selected by the benevolent Paul Tulane, the wisest and safest custodian of the fund I propose to give, I hereby donate to your Board the sum of One hundred thousand dollars, to be used in establishing the H. Sophie Newcomb Memorial College, in the Tulane University of Louisiana for the higher education of white girls and young women.
I request that you will see that the tendency of the institution shall be in harmony with the fundamental principles of the Christian religion, and to that end that you will have a chapel or assembly room in which Christian worship may be observed daily for the benefit of the students. But I desire that the worship and instruction shall not be of a sectarian or denominational character. I further request that the education given shall look to the practical side of life, as well as to literary excellence. But I do not mean in this my act of donation to impose upon you restrictions which will allow the intervention of any person or persons to control, regulate or interfere with your disposition of this fund, which is committed fully and solely to your care and discretion with entire confidence in your fidelity and wisdom.
Mrs. Newcomb continued to donate monies to Newcomb College through the Tulane Board until her death on April 7, 1901. Thereafter, she made the Tulane Board her universal legatee in her olographic will,[2] which provided, in pertinent part:
First: I have resided of late years in different places, but have made the City of New Orleans my permanent home, because I here witness and enjoy the growth of the "H. Sophie Newcomb Memorial College" a Department of the Tulane University of Louisiana which I have founded, and has been named in honor of the memory of my beloved daughter.
I have implicit confidence that the "Administrators of the Tulane Educational Fund" will continue to use and apply the benefactions and property, I have bestowed and may give, for the present and future development of this Department of the University Known as the H. Sophie Newcomb Memorial College which engrosses my thoughts and purposes, and is endeared to me by such hallowed associations.
Second: I have no forced heirs, I have no debts and I hereby revoke all wills of a date anterior to this.
I hereby make the following special legacies and bequests.
To the Greenwood Cemetery a corporation organized and existing under and by virtue of Chapter 298 of the laws of *52 the State of New York passed in 1838, the sum of two thousand ($2,000) Dollars for the care of lots numbered 17,036 and 17,037, and it is my desire, that at my death, my remains may be placed with the loved ones there at rest.
To Alice Bowman of New Orleans Louisiana Five Thousand ($5,000) Dollars.
To William Robertson of Charleston South Carolina One Thousand ($1,000) Dollars.
Third: With the exception of the Special legacies and bequests herein above stated and made, I hereby give and bequeath to the "Administrators of the Tulane Educational Fund" of New Orleans, the whole of the property real, personal and mixed, of which I am now possessed or which I may leave at the time of my death, and to that end and purpose I do hereby name and constitute the said "Administrators of the Tulane Educational Fund" to be my universal legatee.
I appoint my cousin and friend Joseph S. Hincks and my friend B.V.B. Dixon to be Executors giving them seizin and detainer of my estate and requiring no bond from them.
Thus wholly have I written dated and signed this my last will and testament at New Orleans Louisiana this 12th day May 1898.
Plaintiffs allege that these donations both inter vivos and mortis causa "were made with the expectation that the Tulane Board would continue H. Sophie Newcomb Memorial College as a separate entity within Tulane University"; yet, "[n]otwithstanding [Mrs. Newcomb]'s clear and explicit intent and the Tulane Board's more than 119-year satisfaction of the restrictions of her donations, the Tulane Board voted to close H. Sophie Newcomb Memorial College on June 30, 2006, and to divert funding dedicated to support of H. Sophie Newcomb Memorial College" under its Renewal Plan.[3]
Alleging that the Tulane Board breached its fiduciary duty as stewards of Mrs. Newcomb's donations and arguing that, if the Tulane Board was allowed to proceed, Newcomb College would be closed forever, which would constitute irreparable harm for which monetary damages would be an inadequate remedy, the plaintiffs sought: (1) a preliminary injunction enjoining and prohibiting the Tulane Board from abolishing Newcomb College; (2) a permanent injunction enjoining and prohibiting the Tulane Board from abolishing Newcomb College; and (3) a declaratory judgment determining that the Tulane Board's actions violate the terms and conditions of *53 Mrs. Newcomb's donations, inter vivos and mortis causa, to the Tulane Board, that the continuance of Newcomb College is not impractical, impossible or illegal, and that Newcomb College must continue as a degree-granting college within Tulane University.
In response, the Tulane Board filed peremptory exceptions of prescription, res judicata, no right of action, and no cause of action. On June 12, 2006, the district court heard the plaintiffs' petition for preliminary injunctive relief. The exceptions were treated as an opposition or defense to the injunction. Subsequently, the district court denied the plaintiffs' petition for preliminary injunction, reasoning:
A clear reading of Ms. Newcomb's will shows that she intended for Tulane, as universal legatee, to use the balance of her estate to maintain a women's higher education college. The Court finds that the provisions of Ms. Newcomb's will did not create an enforceable conditional obligation that would support the granting of a preliminary injunction prohibiting Tulane from abolishing Newcomb College as a separate college within Tulane Universisty [sic].
Plaintiffs have failed to make a prima facie case that they will suffer irreparable injury by the implementation of Tulane's Renewal Plan that merges Newcomb and Tulane Colleges and creates the H. Sophie Newcomb Memorial College Institute. Further, there's been no prima facie showing by plaintiffs that they will prevail on the merits that abolishing Newcomb as an independent college violates the express terms of Ms. Newcomb's will.
The district court did not rule on the peremptory exceptions.
On appeal to the Fourth Circuit Court of Appeal, the majority of the appellate court, before addressing the merits of the petition for injunctive relief, addressed sua sponte the issue of whether the plaintiffs' have a right to assert a claim for injunctive relief relating to Mrs. Newcomb's donations inter vivos or mortis causa and concluded that they did not. Howard v. Administrators of Tulane Educational Fund, 06-1276 (La.App. 4 Cir. 10/22/07), 970 So.2d 21. After noting the lack of precedent for non-legatee, would-be heirs to sue on behalf of the donor for injunctive relief against a donee that was also their relative's universal legatee, the majority separately examined the terms of each donation at issue.
As to the donation inter vivos, the court reasoned that Mrs. Newcomb expressed her unconditional trust in the Tulane Board's ability to manage her donation and that her language was clear, unambiguous, and did not contain a reversionary clause. Given the plain meaning of her words, the majority found that the terms barred the plaintiffs from interfering in the defendant's administration of the donations inter vivos. Regarding the donation mortis causa, the majority reasoned that the district court correctly determined that Mrs. Newcomb did not impose a conditional obligation on her bequest. Moreover, the majority found that the language in the will was more precatory in nature than binding and that the wording conveyed that, while Mrs. Newcomb entrusted the Tulane Board with overseeing the development of Newcomb College, she did not impose any real conditions upon the institution to carry out her wishes.[4] Because *54 the district court did not act on the defendant's exception of no right of action, the appellate court remanded the matter with instructions for the district court to grant the exception of no right of action and dismiss plaintiffs' petition for a preliminary injunction.
In his dissent from the majority opinion, Judge Tobias explained that he would remand this matter for a hearing on the defendant's exception of no right of action and afford the plaintiffs the opportunity to amend their petition to more accurately establish their standing as would-be heirs of Mrs. Newcomb rather than ruling on the issue sua sponte. Pretermitting momentarily the issue of whether the plaintiffs were in fact the would-be heirs, Judge Tobias found that Louisiana law recognizes a cause of action to enforce a charge or condition on a donation and that Mrs. Newcomb's donations imposed a condition upon the donee to continue Newcomb College as a degree-granting college within Tulane University.
The plaintiffs sought writs to this Court, which we granted to address the issue of whether our law recognizes a right of action of a non-legatee, would-be heir to institute suit for injunctive relief on behalf of a donor/testator to enforce a conditional donation inter vivos or mortis causa. However, before reaching the merits of this issue, we must first resolve the threshold issue of whether plaintiffs have a right of action, and therefore, standing, to sue to enforce the allegedly conditional dispositions of Mrs. Newcomb's donations, which requires a determination of whether the plaintiffs are, in fact, the successors or would-be heirs[5] of Mrs. Newcomb.

LAW AND DISCUSSION
A party seeking an injunction must have standing to sue or, more comprehensively, the action must present a justiciable controversy.[6]Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314, 318 (La.1981). To have standing the plaintiff must assert an adequate interest in himself, which the law recognizes, against a defendant having a substantial adverse interest. J. Weingarten, Inc. v. Northgate Mall, Inc., 404 So.2d 896, 899, n. 2 (La.1981). An action can only be brought by a person having a real and actual interest, which he asserts. La.Code Civ. Proc. art. 681.
The substantive right at issue herein is the right to enforce a conditional donation inter vivos or mortis causa against a donee or universal legatee, and the question before this Court is to whom does the law recognize this right to enforce belong. To resolve this question, we must examine the provisions of our Civil Code governing donations, successions, and obligations, as well as provisions of our Code of Civil Procedure and commentaries and authorities on our French civilian tradition.
Louisiana law recognizes two kinds of donations. La. Civ.Code art. 1467. "A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it." La. Civ.Code art. 1468. "A donation mortis causa (in prospect of death) is an act to take effect, when the donor shall no longer exist, by which he disposes of the whole or a part of his property, and which is revocable." La. *55 Civ.Code art. 1469. A donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals. La. Civ.Code arts. 1519 and 1527. Donations burdened with charges imposed on the donee are categorized as onerous donations. La. Civ.Code art. 1523. Our law recognizes that such a donation, i.e., a conditional donation, can impose on the donee an obligation to fulfill the terms of the condition or charge to which the donation is subjected. See Frederick William Swaim, Jr. & Kathryn Venturatos Lorio, 10 Louisiana Civil Law Treatise, Successions and Donations § 9.12, 226 (West 1995); La. Civ. Code art. 1567; see also, Marcel Planiol, 3 Treatise on the Civil Law, Part 2, No. 2579, p. 262 (11th Ed.1938, La.St.L.Inst.trans.1959)("[d]onation is a contract; it creates obligations"); Aubry & Rau, XI Droit Civil Français § 707 (6th Ed. Esmein 1954, 1956), 3 Civil Law Translations at 396, n. 5 (Carlos E. Lazarus, La.St.L.Inst. trans. 1969)(the terms condition and charge are used synonymously with the term obligation).
Our law also recognizes the right to revoke or dissolve a donation for nonperformance of the conditions imposed on the donee. La. Civ.Code arts. 1559 (inter vivos) and 1610.1 (mortis causa). The right of revocation, which is an extraordinary remedy especially in the context of donations inter vivos that are by definition irrevocable, belongs to the donor. Swaim and Lorio, supra.
La. Civ.Code art. 1559, governing donations inter vivos, provides:
Donation [Donations] inter vivos are liable to be revoked or dissolved on account of the following causes:
1. The ingratitude of the donee;
2. The non-fulfillment of the eventual conditions, which suspend their consummation;
3. The non-performance of the conditions imposed on the donee;
4. The legal or conventional return.
Similarly, La. Civ.Code art. 1610. 1, as to donations mortis causa, states:
The same causes that authorize an action for revocation of a donation inter vivos are sufficient to authorize an action for revocation of testamentary dispositions.
We note these codal provisions find their origins in the French Civil Code, specifically articles 953 and 1046 of the Code Napoleon (1804), respectively.
Code Napoleon article 953,[7] pertaining to donations inter vivos, provided:
A donation inter vivos cannot be revoked unless on account of the non execution of the conditions under which it shall have been made, on account of ingratitude, and on account of the subsequent birth of children.
See "Historical Notes" of La. Civ.Code Ann. art. 1559 (West 2000) for translation. Article 1046[8] provided:

*56 The same causes which, according to article 954[9] and the first two dispositions of article 955[10] authorize an action for the revocation of a donation inter vivos, are admitted to ground an action of revocation of testamentary dispositions.
See "Historical Notes" of La. Civ.Code Ann. art. 1710 (West 1987), the predecessor of present-day Article 1610. 1,[11] for translation.
Under the French civilian law, Article 953 referred to "conditions," meaning "charges." Planiol, supra at No. 2630, p. 284; Aubry & Rau, supra ("In the phrase `for the non-fulfillment of the conditions' in Art. 953 [La. C.C. Art. 1559], the redactors of the Civil Code have used the word `condition' not in its proper technical signification, but in the vulgar sense to refer to the obligations or charges imposed on the donee."). A "charge" was defined as a performance, which the donee assumed with the donation. Planiol, supra at No. 2630, p. 284. If the donee did not execute the charge or condition, which he assumed, the donation could be revoked. Id. at No. 2631, p. 284; Aubry & Rau, supra at § 707a, p. 397. This was merely an application to donations of a much broader principle applied to all mutual contracts, and an onerous donation was considered such a contract because the donee assumed a personal duty, which made him a genuine debtor of its performance. Planiol, supra at No. 2631, p. 284; Aubry & Rau, supra at § 707a, p. 397. Applying the general law, it followed that if a donee *57 did not execute the agreed upon charge, the donor could, at his election, either sue him for specific performance, or for damages, or for rescission of the donation. Planiol, supra at No. 2632, p. 285.
The right to demand revocation for non-performance of the charges imposed on the donee and, in turn, the right to enforce belonged to the donor and to his heirs. Id.; Aubry and Rau, supra at § 707a, p. 399. The heirs had this right even if the donor had not demanded performance, except when he had renounced his right to do so before his death. Aubry and Rau, supra at § 707a, p. 399, n. 7. Moreover, a third-party beneficiary of a charge was entitled to claim its execution, but the right to sue for rescission was reserved to the donor and his heirs only. Id. at p. 400; Planiol, supra at No. 2633, p. 286. Like the third-party beneficiary of a stipulation pour autrui, the beneficiary of the charge had only a personal action against the donee to compel him to perform. Aubry & Rau, supra at § 707a, p. 400.
Under Article 1046 of the Code Napoleon, governing donations mortis causa, the right to demand the revocation of a legacy for non-performance of the charges imposed on the donee was accorded to those who were to benefit thereby and who, therefore, had an interest in having it judicially declared. Aubry & Rau, supra at § 727, p. 522. "Thus, depending upon the circumstances of the case, the revocation [could] be sued for by the person bound for the payment of the legacy subject to the charge; by the substitute; by the conjoint co-legatees; and, in the case of charges imposed on a universal legatee either in favor of a third person or for the benefit of the testator himself, by the intestate successors of the latter," i.e., would-be heirs. Id.; see also, 6 Théophile Huc, Commentaire Du Code Civil No. 401, p. 511 (1892). However, the third persons in whose favor the charges had been established had no right to demand the revocation of the legacy; they had only a personal action against the legatee to compel him to perform or execute the charges imposed. Aubry & Rau, supra at § 727, p. 522.
Because the rules governing the revocation of legacies for non-performance of charges were analogous to those relative to the revocation of donations inter vivos for the same causes, the same rules as discussed above applied. Id.; Planiol, supra at No. 2853, p. 391. Consequently, the personal action for the performance of the prescribed charges belonged to all those who could demand revocation, as well as to the beneficiaries of the charges. 2 Gabriel Baudry-Lacantinerie & Maurice Colin, Des Donations Entre Vifs et des Testaments No. 2806, in 10 Traité Théorique et Pratique de Droit Civil (2d ed. 1899-1905). In situations where the charge was imposed on the universal legatee, the revocation of the legacy could be demanded by the intestate heirs, i.e., would-be heirs, because the revocation of the legacy would rebound to the benefit of those heirs. Huc, supra. Being able to demand revocation, the intestate heirs could advance the execution of the charges as a main remedy. Id.
Under long-standing and well-established jurisprudence constante, where a Louisiana Civil Code article has been derived from a French Civil Code article, interpretation of the latter is highly instructive for, if not determinative of, the interpretation of the former. See Bartlett v. Calhoun, 412 So.2d 597, 599 (La.1982); Higgins Oil & Fuel Co. v. Guaranty Oil Co., 145 La. 233, 237, 82 So. 206, 207 (1919). For ascertaining the true meaning of our present provisions, we resort to the works of renowned French commentators interpreting the civilian provisions from *58 whence our articles were derived by the framers of our Civil Code. Higgins Oil & Fuel Co., 145 La. at 237, 82 So. at 207. Accordingly, our interpretation of the provisions of La. Civ.Code arts. 1559 and 1610.1 is guided by the interpretation of Code Napoleon arts. 953 and 1046.[12] Although their provisions have evolved over the past two centuries, there is no reason why the application of articles 1559 and 1610.1 should not have the same legal effects as their predecessors. Therefore, it logically follows that the one who has the right to revoke a donation inter vivos or mortis causa for non-performance of a charge or condition should likewise have the corollary right to enforce it.
This interpretation is supported by the application of our general codal provisions. As explained above, a conditional or onerous donation can impose an obligation on the donee, and as in the French tradition, under our general obligation articles, an obligation can give the obligee the right to enforce the performance that the obligor is bound to render. La. Civ.Code art. 1758. Our code also grants to the donor the right to revoke a donation for non-performance of a condition. La. Civ.Code arts. 1559 and 1610.1. It logically follows that the right of revocation grants to the donor the principal remedy of performance of the conditions imposed on the donee and, thus, the right to enforce the performance of the conditions.
The right to enforce an obligation is the property of the obligee, and this right of action to enforce is transmitted on his death with his estate to his heirs or universal legatees, except as otherwise provided by law. La.Code Civ. Proc. art. 426. This rule applies also to a right to enforce an obligation, when no action thereon was commenced prior to the obligee's death. Id. As property of the donor, the corollary rights to revoke and enforce are, therefore, transmitted on his death with his estate to his successors.
Accordingly, heirs and universal legatees have a right of action to seek enforcement of an obligation imposed by a charge or condition to which a donation is subjected. The right accrues to them in their capacity as heirs or legatees, i.e., successors, and the rights of a successor, including his right to sue on behalf of an obligee to enforce a conditional donation, are transmitted to his own successors at his death, whether or not he accepted the rights, and whether or not he knew that the rights accrued to him. La. Civ.Code art. 937.
Furthermore, Louisiana jurisprudence recognizes that the right to revoke a donation mortis causa for nonperformance of a charge belongs to those who would benefit were the donation to be revoked. See Braquet v. Administrators of Tulane Educational Fund, 304 So.2d 720 (La.App. 4 Cir.), writ denied, 305 So.2d 538 (La.1974). With the right to demand revocation comes the right to seek enforcement. Because the revocation of a universal donation mortis causa would rebound to the benefit of the intestate successors,[13] would-be heirs have the right to *59 bring suit to enforce the charge in conjunction with their right to seek revocation. Once again, however, the right accrues to an individual in his capacity as successor.
The principles of equity further support this resolution. See generally, La. Civ. Code art. 4. If the would-be heirs had no action to proceed against the universal legatee, then the legatee could default on his obligations with impunity, and Articles 1559 and 1610.1 would exist without effect.
In their petition, plaintiffs allege they have the right to sue for injunctive relief because they are the collateral heirs of Mrs. Newcomb, "[a]s evidenced by [their] affidavits attached [thereto] as Exhibit A."[14] These affidavits of the individual plaintiffs only attest to their descent from Mrs. Newcomb's sister, Eleanor Ann LeMonnier Henderson. As such, they do not establish their heirship or rights as successors of Mrs. Newcomb's sister, much less as collateral heirs of Mrs. Newcomb, because the rights of a successor are transmitted upon death not to his descendants, but to his successors.
When the facts alleged in the petition provide a remedy under the law to someone, but the plaintiff who seeks the relief is not the person in whose favor the law extends the remedy, the proper objection is no right of action, or want of interest in the plaintiff to institute the suit. Harry T. Lemmon & Frank L. Maraist, 1 Louisiana Civil Law Treatise, Civil Procedure § 6.7, 121 (West 1999). The objection is urged through the peremptory exception of no right of action raised by the defendant or noticed by the court on its own motion, in either the trial or appellate court. Id.; La.Code Civ. Proc. arts. 927 and 2163. If the pleadings fail to disclose a right of action, the claim may be dismissed without evidence, but the plaintiff should be permitted to amend to state a right of action if he or she can do so. Lemmon & Maraist, supra; R.G. Claitor's Realty v. Juban, 391 So.2d 394, 398-99 (La.1980);[15] La.Code Civ. Proc. art. 934. If the pleadings state a right of action in the plaintiff, the exceptor may introduce evidence to controvert the pleadings on the trial of the exception, and the plaintiff may introduce evidence to controvert any objections. *60 Lemmon & Maraist, supra; La. Code Civ. Proc. art. 931.
The Tulane Board raised the exception of no right of action in opposition to the plaintiffs' petition, but the district court did not rule on the exception. The appellate court noticed the failure of the plaintiffs to disclose a right or interest to institute this suit and ruled sua sponte. The appellate court, however, did not properly analyze whether the plaintiffs had a right of action, but rather essentially addressed the merits and concluded that because the plaintiffs could not succeed on the merits, they had no right of action. This was error, and therefore, we vacate its judgment.[16]
A proper analysis of a no right of action exception requires a court to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. La.Code Civ. Proc. art. 927; Reese v. State Dept. of Public Safety and Corrections, 03-1615, pp. 2-3 (La.2/20/04), 866 So.2d 244, 246; Industrial Companies, Inc. v. Durbin, 02-0665, pp. 11-12 (La.1/28/03), 837 So.2d 1207, 1216. The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, but it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Reese, 03-1615 at p. 3, 866 So.2d at 246; Industrial Companies, Inc., 02-0665 at p. 12, 837 So.2d at 1216. The court begins with an examination of the pleadings. See R.G. Claitor's Realty, 391 So.2d at 398-99; Lemmon & Maraist, supra.
In this case, the right to enforce a conditional donation is afforded to donors and their successors and would-be successors, but as discussed above, plaintiffs' petition with its incorporated affidavits fails to disclose a right of action or want of interest in the plaintiffs to institute this suit as it fails to attest to the plaintiffs' successorship to Mrs. Newcomb. Therefore, the plaintiffs' claim may be dismissed without evidence. However, because such a judgment would be dispositive of the case on the merits, the plaintiffs should and must first be given the opportunity to amend their petition to more accurately establish their standing as the would-be heirs of Mrs. Newcomb, i.e., their successorship. La.Code Civ. Proc. art. 934. Therefore, we sustain the exception of no right of action and remand this case to the district court to allow the plaintiffs to amend their petition.

CONCLUSION
With the assistance of the works of French civilian commentators, we have interpreted our Civil Code provisions on revocation of donations, and we conclude that the right of revocation belongs to the donor and his successors, including those who would benefit from the revocation, i.e., would-be heirs and legatees,[17] and that in conjunction with the right to sue for revocation *61 of a donation for non-performance of a condition is the corollary right to sue for enforcement of that condition. Therefore, our law recognizes the right of would-be heirs to seek enforcement of a conditional donation. However, the plaintiffs in their pleadings do not establish their status as Mrs. Newcomb's would-be heirs. Accordingly, we vacate the judgment of the court of appeal, sustain the exception of no right of action, and remand this matter to the district court to allow the plaintiffs to amend their petition to more accurately establish their standing as successors, or would-be heirs, of Mrs. Newcomb.

DECREE
For the foregoing reasons, we vacate the judgment of the court of appeal, sustain the exception of no right of action, and remand this matter to the district court to allow the plaintiffs to amend their petition.
VACATED AND REMANDED.
CALOGERO, C.J., assigns additional concurring reasons.
JOHNSON, J., dissents and assigns reasons.
WEIMER, J., dissents with reasons.
CALOGERO, Chief Justice, Assigning Additional Concurring Reasons:
I subscribe to this opinion because I tend to agree with the majority that the plaintiffs herein have only asserted that they have standing as descendants of the donor such that, as footnote 17 says, the case only involves the possibility of would-be heirs. As a consequence, we have sustained the exception of no right of action, but remanded the case to the district court to afford the plaintiffs an opportunity to amend their petition to assert and then to prove, if they can, that they are would-be heirs of the donor who have standing to bring this action. I am concurring additionally to accentuate my understanding that the majority has not foreclosed, as a matter of law, the possibility that persons not contending to be heirs, but rather third-party beneficiaries, may have standing to enforce a conditional donationthat is, to see that the law respects the testator's wishes regarding the conditional donation. I do not believe that the majority has in this case determined that a right of action to invalidate a conditional donation may be exercised only by a donor's successors or would-be heirs, but has left open the possibility that other persons might have such a right of action under Louisiana law.
JOHNSON, Justice, dissenting and assigning reasons.
The appellate court, sua sponte, addressed the exception of no right of action, and determined that Plaintiffs had no standing to seek injunctive relief, or to enforce the alleged conditions of Mrs. Josephine Louise Newcomb's donations to Tulane University. The majority of this Court sustains the exception of no right of action, thus concluding that Plaintiffs' claims should be dismissed, without evidence. While the majority would remand this case to the district court to allow the Plaintiffs to amend their Petition to establish their standing as would-be heirs, they have effectively denied the plaintiffs the opportunity and right to have a hearing and present evidence on the standing issue.
In conjunction with holding that Plaintiffs had not proven their standing as would-be heirs of Mrs. Newcomb, the majority also essentially makes a determination that a cause of action is reserved solely for a donor's "would-be heirs." However, the district court has never considered *62 Tulane's exception of no right or action, nor did it rule upon whether the Plaintiffs could seek enforcement of Mrs. Newcomb's alleged conditional donations to Tulane. Rather than make a final determination of this issue now, I would allow the trial court to hold a hearing and determine whether these Plaintiffs have standing and a right to pursue this action as Mrs. Newcomb's would-be heirs, successors, or by some other means.
Thus, I would reverse the ruling of the appellate court and remand the case to the district court for a hearing, which would allow Plaintiffs to present evidence on the standing issue as authorized by La. C.C.P. art. 931.[1]
WEIMER, J., dissenting.
I respectfully dissent.
Because of a failure to establish that the donation or will imposed a condition requiring that H. Sophie Newcomb Memorial College be maintained as a separate degree granting institution, I would reinstate the trial court decision.
NOTES
[1] Testate successors are referred to as legatees, and intestate successors are heirs. La. Civ.Code art. 876. These two kinds of successors correspond to the two categories of successions: intestate and testate. Id. "Intestate succession results from provisions of law in favor of certain persons, in default of testate successors." La. Civ.Code art. 875. "Testate succession results from the will of the deceased, contained in a testament executed in a form prescribed by law." La. Civ.Code art. 874. "Testamentary dispositions are particular, general, or universal." La. Civ.Code art. 1584. "A universal legacy is a disposition of all of the estate, or the balance of the estate that remains after particular legacies." La. Civ.Code art. 1585. Thus, a universal legatee is bequeathed the entirety of the estate or the residuum of the estate remaining after particular dispositions. See La. Civ.Code Ann. art. 1585, Revision Comment (a) (West 1997).
[2] "An olographic testament is one entirely written, dated, and signed in the handwriting of the testator." La. Civ.Code art. 1575.
[3] In its Memorandum in Support of Exceptions and in Opposition to Plaintiffs' Petition for Preliminary Injunction, the Tulane Board explained in detail its Renewal Plan. In the wake of Hurricane Katrina and the financial crisis in which it placed the University, this Renewal Plan sought to create a unified undergraduate collegiate structure by establishing a single undergraduate college, the Newcomb-Tulane College, into which Newcomb College would be merged. The plan also sought to apply the Newcomb College endowment funds to "continue to support those programs and purposes for which they were originally established," now to be administered under the H. Sophie Memorial College Institute, an academic center designed to enhance higher education for women at Tulane University. Thus, according to the defendant, "the Newcomb funds will be applied to the same programs as before the elimination of Newcomb College, i.e., the Newcomb Fellows, the Newcomb College Center for Research on Women, and the mentoring, leadership, and academic programs formerly administered by Newcomb College. The only change in expenditures will be that they are directed by the Newcomb College Institute executive director instead of the Newcomb College dean."
[4] The appellate court also found no merit to the plaintiffs' argument that they could assert their claim under the Cy Pres doctrine because none of Mrs. Newcomb's donations were conditional and no courts have held that an heir has the right to sue for injunctive relief pursuant to this doctrine. The court pretermitted discussion of all other issues raised on appeal.
[5] See supra note 1 for an explanation of the kinds of successors under Louisiana law.
[6] Courts are without power to render advisory opinions on abstract questions. Stoddard v. City of New Orleans, 246 La. 417, 423, 165 So.2d 9, 11 (1964).
[7] The French text of Article 953 stated:

La donation entre-vifs ne pourra être révoquée que pour cause d'inexécution des conditions sous lesquelles elle aura été faite, pour cause d'ingratitude, et pour cause de survenance d'enfans.
Code Civil des Français, Art. 953, p. 231 (Édition Originale et Seule Officielle 1804).
[8] The French text of Article 1046 stated:

Les mêmes causes qui, suivant l'article 954 et les deux premières dispositions de l'article 955, autoriseront la demande en révocation de la donation entre-vifs, seront admises pour la demande en révocation des dispositions testamentaires.
Code Civil des Français, supra, Art. 1046, p. 254.
[9] CN art. 954 (1804) provided:

In the case of revocation for cause of non-performance of conditions, the property shall return into the hands of the donor, free of all charges and mortgages on account of the donee; and the donor shall have, against third persons detaining immovable property bestowed, all the rights which he would have had against the donee himself.
See The Code Napoleon, or The French Civil Code, art. 954, p. 260 (George Spense, trans., Lawbook Exchange, Ltd. 2004), for translation. The French text of Article 954 stated:
Dans le cas de la révocation pour cause d'inexécution des conditions, les biens rentreront dans les mains du donateur, libres de toutes charges et hypothèques du chef du donataire; et le donateur aura, contre les tiers détenteurs des immeubles donnés, tous les droits qu'il aurait contre le donataire lui-même.
Code Civil des Français, supra, Art. 954, p. 231.
[10] CN art. 955 (1804) provided:

The donation during life shall not be revoked for cause of ingratitude except in the following cases:
1st. If the donee have attempted the life of the donor;
2d. If he have become guilty of cruelty, crimes, or heinous injury towards him;
3d. If he refuses him subsistence.
See The Code Napoleon, supra, art. 955, p. 261, for translation. The French text of Article 955 stated:
La donation entre-vifs ne pourra être révoquée pour cause d'ingratitude que dans les cas suivans:
1.° Si le donataire a attenté à la vie du donateur;
2.° S'il s'est rendu coupable envers lui de sévices, délits ou injures graves;
3.° S'il lui refuse des alimens.
Code Civil des Français, supra, Art. 955, p. 232.
[11] La. Civ.Code art. 1710 (1996) provided:

The same causes which, according to the foregoing provisions of the present title, authorize an action for the revocation of a donation inter vivos, are sufficient to ground an action of revocation of testamentary dispositions; provided, however, that no charges or conditions can be imposed by the testator on the legitimate portion of forced heirs, nor can they lose their inheritance for any act of ingratitude to the testator, prior to his decease. That he has not disinherited them shall be sufficient evidence of his having forgiven the offense.
Article 1710 was revised by Acts 1997, No. 1421, due to revisions in our forced heirship laws, and reenacted by Acts 2001, No. 824, § 1, as Article 1610.1.
[12] Lending further support to this argument, the annotated versions of our Civil Code articles 1559 and 1710 cite Planiol as a cross-reference. See La. Civ.Code Ann. art. 1559 (West 2000)(citing under Cross References "Planiol, vol. 3, nos. 2615 et seq., 2628 to 2629, 2630 to 2636"); La. Civ.Code Ann. art. 1710 (West 1987)(citing under Cross References "Planiol, vol. 3, nos. 2853 to 2854").
[13] Revocation of a legacy in such circumstances creates a situation similar to what would occur if the legacy lapsed. Lapsed legacies devolve in accordance with the rules of testamentary accretion. La. Civ.Code art. 1590. When a universal legacy lapses, it devolves by intestacy. La. Civ.Code art. 1596. In this case because her husband and her daughter predeceased her and her daughter had no issue, if the universal legacy lapsed, the estate would devolve to Mrs. Newcomb's parents, if they did not predecease her, and to her siblings, if they did not predecease her, or through representation, to the descendants from them, who existed at the time of her death. See La. Civ.Code Ann. art. 891, Revision Comment1981 (West 2008); La. Civ. Code art. 939 ("A successor must exist at the death of the decedent"). Representation is a legal fiction, which permits an existing or living heir to step into the place, degree, and rights of the person more closely related, i.e., the sibling, who predeceased the decedent. See La. Civ.Code arts. 881 & 884. If none exist, then her other surviving ascendants succeed to her estate, and if no other ascendants survived her, then her other collaterals succeed to her estate. La. Civ.Code arts. 895 & 896. Only in default of blood or adoptive relatives does the State take her estate. La. Civ.Code art. 902. The rights of the existing heir are then transmitted to his successors at his death, as discussed above.
[14] "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." La.Code Civ. Proc. art. 853.
[15] This Court held:

La.Code Civ.P. art. 927 authorizes this court to notice on our own motion the peremptory exception of failure to disclose a right or interest in the plaintiff to institute the suit. Here, the pleadings fail to disclose the right or interest of Nancy M. Claitor to institute this suit. Therefore, her claims must be dismissed.
Id.
[16] Moreover, both lower courts found the donations at issue were unconditional. The courts, however, should never have reached this issue, but rather should have first properly addressed and ruled upon the exception of no right of action. The issue of whether these donations are conditional is not addressed in this opinion and is an issue that is left to be resolved by the courts later in the proceedings.
[17] Because this case involves the possibility of would-be heirs, we express no opinion of standing as to other possible plaintiffs' right of action to enforce a conditional donation as granted by French law, e.g. third-party beneficiaries. See, supra pp. 12-13.
[1] La. C.C.P. art. 931 provides:

On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.
When the peremptory exception is pleaded in the trial court after the trial of the case, but prior to a submission for a decision, the plaintiff may introduce evidence in opposition thereto, but the defendant may introduce no evidence except to rebut that offered by plaintiff.
No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.