| EQUITY TRUST CO., FBO | * | NO. 2023-CA-0779 |
|---|---|---|
| 200267986 (59.51%) & | | |
| 200267988 (40.49%) | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| JAMES M. THORRICK | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-07756, DIVISION "F-14"
Honorable Jennifer M Medley
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge Karen K. Herman)

**LOBRANO, J., CONCURS IN THE RESULT**

Jonah A. Freedman
JONAH FREEDMAN LAW, LLC
700 Camp Street, Suite 316
New Orleans, LA 70130


COUNSEL FOR PLAINTIFF/APPELLEE


Peter S. Title
SESSIONS FISHMAN & NATHAN, LLC
400 Poydras Street, Suite 2550
New Orleans, LA 70170


COUNSEL FOR DEFENDANT/APPELLANT


**AFFIRMED**
**JULY 10, 2024**

Appellant-Defendant, James Thorrick ("Defendant"), appeals the trial court's July 14, 2023 judgment, which denied his exception of no right of action, and granted the motion for summary judgment, filed by Appellee-Plaintiff, Equity Trust Co., FBO 200267986 (59.51%) & 200267988 (40.49%) ("ETC"), and declared Plaintiff to be the 100% owner of the property located at 739-741 Montegut Street. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

This is a tax sale suit. Defendant purchased immovable property located at 739-741 Montegut Street via an Act of Cash sale executed on September 20, 2004. The sale was recorded on September 28, 2004.

Defendant failed to pay 2016 and 2017 *ad valorem* taxes and the property was subsequently put up for auction at a tax sale on April 10, 2018.[1] At the tax sale, ETC placed the winning bid of a one hundred percent (100%) undivided interest in the property and purchased a tax sale certificate on the property for $6,883.12. A tax sale certificate was thereafter issued to ETC on May 9, 2018, and

---

[1] The record shows that Defendant owed $6,123.78 in taxes.

1

recorded on June 5, 2018 in the Land Records Division for Orleans Parish under NA #2018-20821 and CIN 638782.

On August 26, 2022, ETC filed a petition for declaratory relief against Defendant, requesting that it be declared the sole owner of the property and that the tax title to the property be quieted. It further sought all mortgages, liens, and encumbrances be waived and extinguished; that Defendant and heirs be prohibited from claiming any title or interest in the property. It also sought judgment declaring that Defendant was afforded proper notice in anticipation of the tax sale, subsequent to the tax sale, and subsequent to the expiration of the redemeptive period; that ETC complied with all the due process and statutory requirements; and that Defendant be prohibited from asserting lack of notice as a defense.

Defendant filed his answer to the petition on November 18, 2022.

On March 27, 2023, ETC filed motion for summary judgment, arguing it is entitled to a judicial declaration that its tax title property has been confirmed and quieted and a declaration that ETC is the 100% owner of the property. In support of the motion, ETC included Defendant's Act of Cash Sale; an affidavit of Ann Marie Sledge, a legal operations manager for CivicSource – a vendor of the City that provides services related to the collection of property taxes and tax sales, which referenced the various pre-sale and post-sale notices it mailed to Defendant as well as the tax sale certificate executed in favor of ETC.[2] ETC also attached to

---

[2] The notices included: the City of New Orleans Post Tax Sale Notice via First Class Mail to P.O. Box 70262, NOLA 70172 (which was not returned to sender undelivered); a Notice of Tax Sale via Certified Mail to 2005 Royal Street (which was returned to sender because property was vacant); a City of New Orleans Interested Party Notice of Tax Sale, dated October 3, 2017, via Certified Mail to P.O. Box 70262 (which was returned as unclaimed); City of New Orleans Interested Party Notice of Tax Sale, dated November 3, 2017, via First Class Mail to 2612 Dauphine Street (which was not returned to sender); and City of New Orleans Interested Party Notice of Post Tax Sale, dated October 4, 2018, to P.O. Box 70262 (which was not returned to sender).

the motion: an "affidavit pursuant to La. R.S. 47:2157(D)" by Jonah Freedman Law, LLC, which set forth how Defendant was identified; how the addresses of Defendant were obtained; and how the post-tax sale and post-redemptive period notices were sent, the results of sending the notices, and dates.[3] Additionally, the

---

[3] The affidavit contained the following method and results of notifications:

| METHOD: FIRST CLASS NAME/ADDRESS | RESULT | DATE |
|---|---|---|
| James M. Thorrick PO BOX 70261, NEW ORLEANS, LA 70172 | Not Returned to Sender | NA |
| James M. Thorrick 2612 DAUPHINE ST, NEW ORLEANS, LA 70117 | Not Returned to Sender | NA |
| James M. Thorrick 2005 ROYAL ST, NEW ORLEANS, LA 70116 | Returned to Sender | 3/10/2022 |
| James M. Thorrick 3100 DESOTO ST, NEW ORLEANS, LA 70119 | Not Returned to Sender | NA |
| Occupant(s) or Tenant(s) 739 MONTEGUT ST., NEW ORLEANS, LA 70117 | Not Returned to Sender | NA |
| Occupant(s) or Tenant(s) 741 MONTEGUT ST., NEW ORLEANS, LA 70117 | Not Returned to Sender | NA |
| METHOD: CERTIFIED NAME/ADDRESS | RESULT | DATE |
| James M. Thorrick PO BOX 70261, NEW ORLEANS, LA 70172 | Returned to Sender-unclaimed | 5/22/2022 |
| James M. Thorrick 2612 DAUPHINE ST, NEW ORLEANS, LA 70117 | Delivered-Signed Receipt | 2/26/2022 |
| James M. Thorrick 2005 ROYAL ST, NEW ORLEANS, LA 70116 | Returned to Sender | 3/16/2022 |
| James M. Thorrick 3100 DESOTO ST, NEW ORLEANS, LA 70119 | Delivered-Signed Receipt | 2/22/2022 |
| Occupant(s) or Tenant(s) 739 MONTEGUT ST., NEW ORLEANS, LA 70117 | Delivered-Signed Receipt | 2/28/2022 |
| Occupant(s) or Tenant(s) | Delivered-Signed Receipt | 2/28/2022 |

motion for summary judgment included the affidavit of James E. Uschold, the account holder of ETC, who attested he purchased the tax sale certificate of the immovable property; that he has not received any notice of redemption; and that he has paid $28,173.22 in subsequent *ad valorem* taxes. Lastly, ETC attached Defendant's Responses to Request for Admission, to the motion for summary judgment, which provided that the P.O. Box 70261 was a valid address and that he resides at 2614 Dauphine Street;[4] and the service return, showing Defendant was personally served with the citation and petition of this action at 2612 Dauphine Street.

On May 10, 2023, Defendant filed an exception of no right of action and an opposition to ETC's motion for summary judgment.

In his exception, Defendant claimed that the tax sale certificate was purchased by James E. Uschold and thus ETC has no right of action for declaratory relief as it does not have real interest in the matter. Defendant further claimed that there is no Ohio corporation named ETC and therefore it had no right of action to institute this lawsuit. In support of the exception, Defendant offered a document from the Ohio Secretary of State's Office, dated May 4, 2023, stating that there is "NO RECORD of any corporation, limited liability company, partnership, limited partnership, limited liability partnership, trade name registration or report of use of

| 741 MONTEGUT ST., NEW ORLEANS, LA 70117 | | |
|---|---|---|

[4] In his discovery responses, Defendant admitted: "P.O. Box 70261, New Orleans, LA 70172 has been a valid mailing address … for all dates between September 20, 2004 and March 30, 2021." In response to a request for admission regarding property located at 2612-14 Dauphine Street, New Orleans, LA 70117, Defendant responded that he resides "at 2614 Dauphine Street" and the property at 2612-14 Dauphine Street is a double. The 2612 property was used as a rental. Defendant further stated that 2612 Dauphine Street is the address on his driver's license because that was the address used to obtain his homestead exemption.

a fictitious name, either active or inactive, foreign or domestic, known as EQUITY TRUST CO., FBO 200267986 (59.51%) & 200267988 (40.49%), filed in this Office."

In opposition to ETC's motion for summary judgment, Defendant again argued that ETC does not have a right of action. Defendant further claimed that issues of material fact exist as to whether he was duly notified of post-sale notice in accordance with La. R.S. 47:2153 because the notice did not identify the name of the tax sale purchaser and simply stated Defendant was delinquent and that the property had been sold for unpaid taxes. No exhibits were attached to the opposition.

The matter came before the trial court on June 30, 2023, and the trial court granted the motion for summary judgment and denied the exception of no right of action. Judgment to that effect was executed on July 14, 2023.

Defendant's appeal follows.

**APPLICABLE LAW AND ARGUMENT**

Defendant asserts three assignments of error on appeal: (1) the trial court erred in holding ETC was entitled to "absolute ownership" of the property without requiring ETC to justly compensate Defendant for the equity in the property "over the amount of taxes, interest, penalty and costs due, or providing a procedural vehicle" for Defendant to be compensated in light of the recent United States Supreme Court opinion in *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631, 143 S.Ct. 1369, 215 L.Ed.2d 564 (2023); (2) the trial court erred in denying the exception of no right of action; and (3) the trial court erred in granting ETC's motion for summary judgment.

5

<u>Unconstitutional Taking</u>

The Fifth Amendment of the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V.  Pursuant to Article I, Section 4(B) of the Louisiana Constitution, "property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into the court for his benefit." *Faulk v. Union Pac. R.R. Co.*, 2014-1598, pp. 8-9 (La. 6/30/15), 172 So.3d 1034, 1043.

In *Tyler*, 598 U.S. at 647, 143 S. Ct. at 1381, the plaintiff, Geraldine Tyler owned a condominium in Hennepin County, Minnesota, that accumulated about $15,000 in unpaid real estate taxes along with interest and penalties. The County seized the condo and sold it for $40,000, keeping the $25,000 excess over Tyler's tax debt for itself. Tyler filed suit, alleging that the County had unconstitutionally retained the excess value of her home above her tax debt in violation of the Takings Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment. The District Court dismissed the suit for failure to state a claim, and the Eighth Circuit affirmed. The United States Supreme Court granted certiorari and reversed. The Court held that the tax debtor "plausibly alleged a taking under the Fifth Amendment" and that the County's retention of the money remaining after the condo was sold was a taking for which the taxpayer was entitled to just compensation. *Id.*

The *Tyler* Court noted that "Minnesota's scheme provides no opportunity for the taxpayer to recover the excess value; once absolute title has transferred to the

State, any excess value always remains with the State." 598 U.S. at 633, 644, 143 S. Ct. at 1371, 1379.[5]

It noted, however, "Minnesota law itself recognizes that in other contexts a property owner is entitled to the surplus in excess of her debt" (for example: if a bank forecloses on a mortgaged property, state law entitles the homeowner to the surplus from the sale; and in collecting past due taxes on income or personal property, Minnesota protects the taxpayer's right to surplus.). *Id.* The *Tyler* Court found that "Minnesota may not extinguish a property interest that it recognizes everywhere else to avoid paying just compensation when the State does the taking." *Tyler*, 598 U.S. at 633, 143 S. Ct. at 1371. The Court further stated:

> The County had the power to sell Tyler's home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a "classic taking in which the government directly appropriates private property for its own use." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (internal quotation marks and alteration omitted). Tyler has stated a claim under the Takings Clause and is entitled to just compensation.
> …

---

[5] The Court gave the following background of Minnesota law:

> Hennepin County imposes an annual tax on real property. Minn. Stat. § 273.01 (2022). The taxpayer has one year to pay before the taxes become delinquent. § 279.02. If she does not timely pay, the tax accrues interest and penalties, and the County obtains a judgment against the property, transferring limited title to the State. See §§ 279.03, 279.18, 280.01. The delinquent taxpayer then has three years to redeem the property and regain title by paying all the taxes and late fees. §§ 281.17(a), 281.18. During this time, the taxpayer remains the beneficial owner of the property and can continue to live in her home. See § 281.70. But if at the end of three years the bill has not been paid, absolute title vests in the State, and the tax debt is extinguished. §§ 281.18, 282.07. The State may keep the property for public use or sell it to a private party. § 282.01 subds. 1a, 3. If the property is sold, any proceeds in excess of the tax debt and the costs of the sale remain with the County, to be split between it, the town, and the school district. § 282.08. The former owner has no opportunity to recover this surplus.

*Tyler,* 598 U.S. at 635, 143 S. Ct. at 1373.

The Takings Clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong*, 364 U.S., at 49, 80 S.Ct. 1563. A taxpayer who loses her $40,000 house to the State to fulfill a $15,000 tax debt has made a far greater contribution to the public fisc than she owed. The taxpayer must render unto Caesar what is Caesar's, but no more.

*Tyler*, 598 U.S. at 639, 647-48, 143 S. Ct. at 1376, 1380-81.[6]

Defendant contends like the tax debtor in *Tyler*, he should be able to receive the excess value of his property over the tax and that trial court's judgment should be reversed and remanded. It is important to note, however, that Defendant did not raise this constitutional argument before the trial court. This Court in *Sunset Harbour, L.L.C. v. Bush*, 2023-0156, p. 13 (La. App. 4 Cir. 9/26/23), 372 So.3d 855, 863, rejected an appellant's constitutional argument that was raised the first time on appeal. It stated:

Bush claims that the trial court's dismissal of the petition to intervene offends due process and should be reversed based on La. C.C.P. art. 2164, which states that an "appellate court shall render any judgment which is just, legal, and proper upon the record on appeal."

Bush did not raise the constitutional argument before the trial court and is thus raised the first time on appeal. This Court, in *Chaumont v. City of New Orleans,* 2020-0017, p. 4 (La. App. 4 Cir. 6/3/20), 302 So.3d 39, 45-46, recently acknowledged that "appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed" and that "litigants must raise constitutional attacks in the trial court, not the appellate courts, and that the constitutional challenge must be specifically pleaded and the grounds for the claim particularized." *Id.* (citing *Council of City of New Orleans v. Washington*, 2009-1067, pp. 3-4 (La. 5/29/09), 9 So.3d 854, 856-57).

Because Bush did not raise the due process argument at the trial court level he cannot raise it now on appeal.

---

[6] In *257-261 20th Ave. Realty, LLC v. Roberto*, 477 N.J. Super. 339, 307 A.3d 19 (N.J. Super. Ct. App. Div. 2023), while not binding on this Court, the New Jersey Court found that *Tyler* applied to third-party purchasers of tax sale certificates under New Jersey tax sale law.

*Id. See also Woods v. French Mkt. Corp.*, 2021-0689, p. 7 (La. App. 4 Cir. 3/23/22), 336 So.3d 912, 917, *writ not considered,* 2022-01048 (La. 10/12/22), 348 So.3d 68 (finding that appellant waived the constitutional challenges raised the first time on appeal and thus declined to consider them).

Likewise, we find that because Defendant failed to raise the constitutional argument under the Takings Clause for just compensation alleged in *Tyler* before the trial court, he is precluded from raising for the first time on appeal. The record shows that the *Tyler* case was decided on May 25, 2023. The hearing on the motion for summary judgment and exception of no right of action occurred on June 30, 2023. The *Tyler* case was thus decided several weeks prior to the hearing. Accordingly, Defendant cannot raise the constitutional issue of just compensation for the first time before this Court.

Nevertheless, as argued in Defendant's reply brief, Louisiana jurisprudence has recognized several exceptions to the general rule that litigants must raise constitutional challenges in the trial court, including:

> (1) when a statute attempts to limit the constitutional power of the courts to review cases; (2) *when the statute has been declared unconstitutional in another case*; (3) when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court; or (4) when an act which is the basis of a criminal charge is patently unconstitutional on its face and the issue is made to appear as an error patent on the face of the record.

*Unwired Telecom Corp. v. Par. of Calcasieu*, 2003-0732, p. 6, n. 5 (La. 1/19/05), 903 So.2d 392, 399 (quoting *Mosing v. Domas*, 2002–0012, p. 11, n. 2 (La.10/15/02), 830 So.2d 967, 975) (emphasis added). While *Tyler* did not declare a Louisiana statute unconstitutional, Defendant claims the second exception is nevertheless applicable because Louisiana's statutory scheme is similar to

Minnesota's scheme. However, the tax schemes of Minnesota and Louisiana are not analogous and thus we do not consider Defendant's constitutional argument on appeal.

As outlined in *Tyler*, in Minnesota when the taxpayer does not timely pay his taxes, the County obtains a judgment against the property and transfers limited title to the State.[7] After the termination of a three year period to redeem the property, the State obtains absolute title in the property and the State may keep it for public use or sell it. If sold, the County may keep the proceeds in excess of the tax debts and costs.

In Louisiana, when a property owner fails to pay taxes, the Parish, through its tax collector, has a lien by operation of law against the property for the unpaid taxes. *See* La. R.S. 47:1993(G); *Cooley v. Williams*, 2022-0564, p. 5 (La. App. 4 Cir. 1/30/23), 358 So.3d 127, 130, *writ denied*, 2023-00289 (La. 4/25/23), 359 So.3d 978 (citing *Centr. Props. v. Fairway Gardenhomes, LLC*, 2016-1855, 2016-1946, p. 11 (La. 6/27/17), 225 So.3d 441, 448-49). Additionally, the tax collector does not auction the real estate itself; "instead, the tax collector auctions a tax sale title to the property, as evidenced by a tax sale certificate per La. [R.S.] 47:2155, which neither transfers nor terminates the property interest of any person in the property."[8] *Cooley*, 2022-0564, p. 5, 358 So.3d at 130 (citing *Centr. Props.*, 2016-1855, 2016-1946, p. 11 (La. 6/27/17), 225 So.3d 441, 449). "A 'tax sale title' is 'the set of rights acquired by a tax sale purchaser.'" *Id*. (citing La. R.S. 47:2122);

---

[7] *See supra* note 5; *Tyler*, 598 U.S. at 635, 143 S. Ct. at 1373.

[8] The tax sale procedures were overhauled by the enactment of 2008 Sess. Law Serv. Act 819 (H.B. 337) which became effective January 1, 2009. *Cooley,* 2022-0564, p. 5, 358 So.3d at 130; *Cent. Props.,* 2016-1855, 2016-1946, p. 10, 225 So.3d at 448.

*see also* La. R.S. 47:2121(C)(1) (a "tax sale confers on the tax sale purchaser, or on the political subdivision to which the tax sale property is adjudicated, only tax sale title"). The Louisiana Supreme Court recognized that "such set of rights acquired by the tax sale purchaser amounts to a lien on the property." *Id*. (citing *Cent. Props.,* 2016-1855, 2016-1946, p.12, 225 So.3d at 449);[9]*see also Flag Boy Properties, LLC v. Dickerson*, 2019-0754, pp. 4-5 (La. App. 4 Cir. 1/29/20), 291 So.3d 241, 244.

Moreover, when the tax collector auctions the property, the winning bidder is the one willing to pay the least quantity of the property for the amount of taxes, interests, and costs. *See* La. Const. Art. VII § 25(A)(1) (providing "[o]n the day of sale, the collector shall sell the portion of the property which the debtor points out. If the debtor does not point out sufficient property, the collector shall sell immediately the least quantity of property which any bidder will buy for the amount of the taxes, interest, and costs"); La. R.S. 47:2153 (stating that "[o]n the

---

[9] Louisiana Supreme Court in *Cent. Properties,* 2016-1855, p. 12 (La. 6/27/17), 225 So.3d at 449 stated: "[T]he term 'tax sale' actually denotes that it is the tax lien that is purchased in the form of a tax sale title, albeit with future rights of ownership after due notice to all 'tax sale parties' and the expiration of the redemptive period, as well as the filing of a suit to quiet title." *Id.* (citing Comment, *Louisiana Tax Sales: A Mystery Unraveled*, 41 S.U. Law Rev. 345 (2014)). This Court in *Cooley* further explained:

> Louisiana courts have held that "[t]he tax sale purchaser does not acquire title and full ownership in a tax sale property until there is a judgment in a suit to quiet title (L[a. R.S.] 47:2266), a monition proceeding (L[a. R.S.] 47:2271, *et seq.*), or a suit to terminate the interests of the property owner (L[a. R.S.] 47:2157)." *Libertas Tax Fund I, LLC v. Laiche*, [20]21-0330, p. 11 (La. App. 1 Cir. 12/22/21), 340 So.3d 236, 244, *writ denied*, [20]22-00160 (La. 4/12/22), 336 So.3d 82; *LPR, L.L.C. v. Naquin*, [20]20-0847, p. 9 (La. App. 1 Cir. 2/19/21), 319 So.3d 369, 376. "It is not until there is a judgment in a suit to quiet title (La. R.S. 47:2266), a monition proceeding (La. R.S. 2271, *et seq.*), or a suit to terminate the interests of the property owner (La. R.S. 47:2157) that a tax sale purchaser acquires title and full ownership in a tax sale property."

*Cooley,* 2022-0564, pp. 7-8, 358 So.3d at 131-32.

day of sale, the tax collector shall sell the portion of the property which the debtor points out. If the debtor does not point out any property or sufficient property, the tax collector shall sell immediately the least quantity of the property, determined by undivided interests, which any bidder will buy for the amount of taxes, interest, penalties and costs. Except as provided in R.S. 47:2196(D), the purchase price or bid price is the amount of taxes, interest, penalties and costs, and the bidding is by undivided interests with the initial bid being one hundred percent and thereafter declining from the initial bid").

In *Tyler*, the County sold the plaintiff's home for $40,000 to satisfy a $15,000 tax bill and Minnesota kept the remaining $25,000, whereas in the present case, ETC won the bid to buy the property and paid $6,883.12, which was the amount of taxes, interests, and costs. Louisiana did not receive a windfall. Thus, while in Minnesota, the State obtains the title to the property and then it sells the property and maintain the surplus proceeds, in Louisiana the State has a tax lien on the property and the price of the property is the amount of taxes owed plus interest and costs; there are no surplus proceeds. Accordingly, contrary to Defendant's assertions, the statutory tax schemes are not similar such that we would address the constitutional argument raised by Defendant for the first time on appeal.

No Right of Action

*Jurisdictional Issue*

"Appellate courts have a duty to determine *sua sponte*, whether the court has proper jurisdiction to consider the merits of an appeal filed in the court." *Joseph v. Wasserman*, 2021-0138, p. 3 (La. App. 4 Cir. 12/17/21), 334 So.3d 413, 416 (citing *Schwarzenberger v. Louisiana State Univ. Health Sciences Ctr.-New Orleans*, 2018-0812, p. 2 (La. App. 4 Cir. 1/9/19), 263 So.3d 449, 451-52).

Pursuant to La. C.C.P. art. 2083, "[a]n appellate court's jurisdiction extends to final judgments and judgments made expressly appealable by law." *McGaha v Franklin Homes, Inc.*, 2021-0244, p. 24 (La. App. 4 Cir. 2/4/22), 335 So.3d 842, 858 (citing *Riley v. Plaquemines Par. Sheriff's Office*, 2020-0262, pp. 3-4 (La. App. 4 Cir. 9/9/20), 365 So.3d 38, 40). "A judgment that determines the merits in whole or in part is a final judgment." La. C.C.P. art. 1841. An interlocutory judgment is one that determines "preliminary matters in the course of the action." *Id.*

An exception of no right of action is explicitly defined under La. C.C.P. art. 927 as being peremptory in nature.[10] *Precept Credit Opportunities Fund, LP v. Dave*, 2023-0104, p. 9 (La. App. 4 Cir. 10/3/23), 376 So.3d 210, 218. "The overruling of a peremptory exception is merely an interlocutory order." *Id.* (quoting *Foster v. Bias*, 22-0329, p. 15 (La. App. 1 Cir. 12/22/22), 358 So.3d 520, 534). Thus, the judgment denying an exception of no right of action is an interlocutory ruling.

As this Court explained in *Pizzati v. DS Services of America, Inc.*, 2021-0344, pp. 17-18 (La. App. 4 Cir. 3/23/22), 336 So.3d 943, 955:

> "It is well-settled that although an interlocutory judgment may not itself be immediately appealable, it is nevertheless subject to review by an appellate court when an appealable judgment is rendered in the case." *Elysian, Inc. v. Neal Auction Co.*, 2020-0674, p. 9 (La. App. 4 Cir. 7/21/21), 325 So.3d 1075, 1083 (citing *People of the Living God v. Chantilly Corp.*, 251 La. 943, 207 So.2d 752, 753 (1968); *Phillips v. Gibbs*, 2010-0175, p. 4 (La. App. 4 Cir. 5/21/10), 39 So.3d 795, 798). "[A]n appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to them, in addition to

---

[10] La. C.C.P. art. 927(A)(6) provides that "[t]he objections that may be raised through the peremptory exception include": "[n]o right of action, or no interest in the plaintiff to institute the suit."

13

review of the final judgment when an unrestricted appeal is taken." *Treas v. Koerner*, 2019-0390, p. 11 (La. App. 4 Cir. 11/13/19), 364 So.3d 55, 63 (quoting *Maqubool v. Sewerage & Water Bd. of New Orleans*, 2018-0572, p. 3 (La. App. 4 Cir. 11/14/18), 259 So.3d 630, 632-33).

Defendant seeks to appeal the trial court's decision granting ETC's motion for summary judgment. The granting of the exception of no right of action is an adverse interlocutory ruling prejudicial to Defendant. Therefore, we will consider Defendant's challenge to the trial court's judgment on the exception of no right of action together with his appeal of the motion for summary judgment.

"Peremptory exceptions raising the objection of no right of action are reviewed *de novo* on appeal as they involve questions of law." *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Hotel Royal, L.L.C.*, 2009-0641, p. 4 (La. App. 4 Cir. 2/3/10), 55 So.3d 1, 2, *on reh'g* (1/5/11) (citing *Fortier v. Hughes,* 2009–0180, p. 2 (La. App. 4 Cir. 6/17/09), 15 So.3d 1185, 1186).

This Court in *Ahmed v. Downman Dev., L.L.C.,* 2017-0114, pp. 5-6 (La. App. 4 Cir. 12/28/17), 234 So.3d 1111, 1115–16, set forth the applicable law on an exception of no right of action, as follows:

> Generally, an action can be brought only by a person having a real and actual interest which he asserts." *Rebel Distributors Corp., Inc. v. LUBA Workers' Comp.*, [20]13-0749, p. 9 (La. 10/15/13), 144 So.3d 825, 832; La. C.C.P. art. 681. "When the facts alleged in the petition provide a remedy under the law to someone, but the plaintiff who seeks the relief is not the person in whose favor the law extends the remedy, the proper objection is no right of action, or want of interest in the plaintiff to institute the suit." *Howard v. Administrators of Tulane Educational Fund*, [20]07-2224, p. 16 (La. 7/1/08), 986 So.2d 47, 59, *citing* Harry T. Lemmon & Frank L. Maraist, 1 *Louisiana Civil Law Treatise, Civil Procedure* § 6.7, 121 (West 1999). The objection is urged through a peremptory exception of no right of action raised by the defendant or the court on its own motion, in either the trial or appellate court. *Howard, supra*; *see* La. C.C.P. art. 927. "The function of an exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit." *N.*

*Clark, L.L.C. v. Chisesi*, [20]16-0599, p. 5 (La. App. 4 Cir. 12/7/16), 206 So.3d 1013, 1016, *quoting Hood v. Cotter*, [20]08-0215, p. 17 (La. 12/2/08), 5 So.3d 819, 829.

In examining an exception of no right of action, the court assumes that the petition states a valid cause of action for some person but questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. *J–W Power Co. v. State ex rel. Department of Revenue & Taxation*, [20]10-1598, p. 7 (La. 3/15/11), 59 So.3d 1234, 1239. The court begins with an examination of the pleadings. *Gisclair v. Louisiana Tax Comm'n*, [20]10-0563, p. 2 (La. 9/24/10), 44 So.3d 272, 274. If the pleadings state a right of action in the plaintiff, then, at the trial of the exception, the parties may introduce evidence to support or controvert the exception. *Howard*, [20]07–2224, p. 17, 986 So.2d at 59.

Defendant argues that the trial court erred in denying his exception because ETC has no right of action to pursue this suit because James E. Uschold attested that he is the person who purchased the tax sale title and because there is no Ohio corporation bearing the name "as EQUITY TRUST CO., FBO 200267986 (59.51%) & 200267988 (40.49%)."

ETC, however, argues it has a right of action because ETC is the name on the tax sale certificate. It argues that Uschold signed the affidavit to support the summary judgment because he is account holder of 200267986 and 200267988, and he, through these accounts, purchased the tax sale certificate.[11] ETC also notes that while the petition alleged it has its business located in Westlake, Ohio, it was actually organized in South Dakota.[12] Moreover, ETC claims that regardless if it is an Ohio or South Dakota entity, it was the appropriate party to institute the lawsuit.

---

[11] *See Smith ex rel. Upchurch v. McGuire Funeral Home, Inc.*, 46,326, p. 1 (La. App. 2 Cir. 6/1/11), 70 So.3d 873, 877 (noting that "FBO" for banking purposes means "for the benefit of").

[12] South Dakota is not referenced in the petition. The petition alleged it an Ohio corporation with its principle place of business in Westlake, Ohio. ETC notes for clarity it should have alleged that ETC was Ohio based corporation legally organized under the laws of South Dakota.

ETC's arguments are persuasive. The affidavit shows that Uschold is the owner of the accounts and that through ETC, he purchased the tax sale certificate of the property. Uschold was thus the proper person to attest to the facts presented. *See* La. C.C.P. art. 967(A) (noting that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"); *Johnson v. River Birch, LLC*, 2023-21, p. 9 (La. App. 5 Cir. 12/20/23), 378 So.3d 247, 252-53 (manager for a land surveying corporation who had personal knowledge of the surveys conducted by the company executed an affidavit regarding location of potholes); La. C.C.P. art. 1442 (allowing a designated officer, director, agent, or other person to testify on behalf of a corporation, association, or partnership); *Amedee v. Aimbridge Hosp. LLC*, 2020-0590, p. 8 (La. App. 4 Cir. 12/16/22), 354 So.3d 250, 255 (corporate representative of Premium Parking testified in a deposition regarding the entrance to the parking garage). Additionally, whether ETC was a South Dakota or Ohio corporation does not have bearing on its right of action to pursue the instant action.[13] ETC as the entity on the tax sale certificate is the appropriate party to file suit in the present case. As such, the trial court's decision did not err in denying Defendant's exception of no right of action.

Summary Judgment

---

[13] The Ohio Secretary of State's website shows that "Equity Trust Company" is a South Dakota corporation and lists its address as 1 Equity Way, Westlake, Ohio. Similarly, the South Dakota corporate registry website lists ETC's principle office in Ohio. *See Del Vescovo v. Air & Liquid Sys. Corp.,* 2023-0116, p. 10, n. 7 (La. App. 4 Cir. 11/15/23), 377 So.3d 759, 768 (stating that an appellate court can take notice of government websites); *Roy Anderson Corp. v. 225 Baronne Complex, L.L.C.*, 2017-1005, p. 7 (La. App. 4 Cir. 7/11/18), 251 So.3d 493, 499, (a court may take judicial notice of public records); La. C.E. art. 201(B)(permitting a court to take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

The applicable standard of review is as follows: "[a] summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *In re Precept Credit Opportunities Fund, L.P.,* 2021-0428, p. 4 (La. App. 4 Cir. 1/19/22), 366 So.3d 409, 412, *writ denied*, 2022-00341 (La. 5/10/22), 337 So.3d 910 (quoting *Planchard v. New Hotel Monteleone, LLC*, 2021-0347 (La. 12/10/21), 332 So.3d 623, 625). "[S]ummary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." *Id*. (quoting La. C.C.P. art. 966(A)(3)).

As his final assignment of error, Defendant claims that the trial court erred in granting summary judgment in ETC's favor because the post-sale notice was deficient. Defendant argues that La. R.S. 47:2157 permits the *tax sale purchaser* to notify the tax debtor six months before the redemptive period expires and gives the tax debtor time to annul the tax sale. (emphasis added). Defendant claims, however, that the notice ETC sent does not identify the tax sale purchaser and is merely signed by an attorney without identifying who he represents. Defendant argues that because La. R.S. 47:2157 states notice must be sent by the "tax sale purchaser" the notice sent to Defendant is insufficient.

La. R.S. 47:2157 provides:

A. (1) Upon the expiration of the applicable redemptive period, the *tax sale purchaser may send a notice to a tax sale party* whose interest the tax sale purchaser intends to terminate that the party has until the later of:

(a) Sixty days after the date of the notice provided in this Subsection, if five years have elapsed from the filing of the tax sale certificate to challenge, in a court of competent jurisdiction, the tax sale.

(b) Six months after the date of the notice if five years have not elapsed from the filing of the tax sale certificate, to challenge, in a court of competent jurisdiction, the tax sale.

(2) This notice shall constitute a notice of sale, and sending of this notice shall constitute the service of the notice of sale under Article VII, Section 25 of the Louisiana Constitution. This notice shall be sufficient without regard to whether the notice of the tax sale or any other notice has been given. *The notice shall be sufficient if it is in the following form*:

**"This is an important legal notice.**

**Please read it carefully. You will receive no further notice.**

**[Date]**

[Name]

[Address]

[City], [ST] [Zip]

RE: Property: [Property Address]
             [Description of Property Abbr]
Parish of _____, State of Louisiana

Tax sale title to the above described property has been sold for failure to pay taxes. You have been identified as a person who may have an interest in this property.

Your interest in the property **will be terminated** if you do not file a lawsuit in accordance with law within [60 days] [6 months] of the date of this notice."

(emphasis in original).

A review of the notice attached to the motion for summary judgment, set forth as Exhibit E, demonstrates that ETC complied with the statute because the post-sale notice issued to Defendant mirrors the form set forth in La. R.S. 47:2157(A)(2). The notice, sent via certified mail, provides the property address,

description, and advised that the property was sold for failure to pay taxes as well as advised that the interest in the property will be terminated if the debtor does not file suit within six months. The notice form provided in La. R.S. 47:2157 does not specify who should send the notice. *See* La. R.S. 47:2157, cmt.(b) (stating "A statutory safe harbor form of notice is provided. Nothing in this Subsection [La. R.S. 47:2157(A)] limits the method by which the notice is sent.")[14]

Furthermore, the fact that the tax sale purchaser was not identified as ETC is irrelevant as Comment (f) to La. R.S. 47:2157 provides that an attorney or agent of a tax sale purchaser could sent notice. It states, in relevant part:

> Nothing in this Section should be construed to limit who can send the notice or who executes the affidavit. It could be the original tax sale purchaser, his successors or assigns, or their agent, attorney or title agent. *Cf. Laney v. City of New Orleans*, [2005-0521 (La. App. 4 Cir. 10/27/06), 945 So. 2d 79].[15] The issue is whether a particular tax sale party was duly notified regardless of who sent the notice or how the notice was sent.

---

[14] In *Stow-Serge v. Side by Side Redevelopment, Inc.*, 2020-0015, p. 8 (La. App. 4 Cir. 6/10/20), 302 So.3d 71, 78, this Court addressed the sufficiency of notice under a different provision than the one at issue, but nevertheless recognized that the form provides a safe harbor for statutory compliance. This Court stated:

> SBS argues that the notice was not legally sufficient because it did not state the amount of taxes due as set forth in La. R.S. 47:2156(B)(2). While SBS suggests that Section La. R.S. 47:2156 (B)(2) sets forth mandatory requirements, it is clear from the language in the statute and the 2008 comments that La. R.S. 47:2156(B)(2) is directory in nature and provides a safe harbor for compliance with the statutory mandates. Moreover, there is no penalty provided for failure to comply with the directives set forth in La. R.S. 47:2156 because it is not fatal to the legal sufficiency of the notice.

*Id.; see also*, La. R.S. 47:2156, Cmt.(d) ("A statutory safe harbor for the notice in Subsections A and B is provided in Subsection B").

[15] In *Laney*, the Fourth Circuit held that that the City was not mandated by statute to send notice to mortgagee regarding prospective sale of property through the City's sale of abandoned property program, but rather the City could delegate that responsibility to law firm that was hired by purchaser's counsel to send notice.

La. R.S. 47:2157, cmt. (f).

The notice(s) provided by La. R.S. 47:2157 do not require that the tax sale purchaser be identified and the attorney of the tax sale purchaser, as in this case, could send the notice to Defendant on behalf of ETC. As such, Defendant's argument in this regard lacks merit.

In addition to compliance with the post-sale notice, the record shows that ETC was entitled to summary judgment. ETC included a certified copy of its recorded tax sale certificate with its motion for summary judgment, which is prima facie evidence of the validity of the tax sale proceedings. The burden then shifted to Defendant to establish a defect in the proceedings. This Court in *Lepree v. Dorsey*, 2022-0853, p. 15 (La. App. 4 Cir. 8/11/23), 370 So.3d 1191, 1201, *writ denied*, 2023-01238 (La. 12/5/23), 373 So.3d 982:

> Louisiana Constitution Article VII, Section 25(A)(1) (1974) states that "[a] tax deed by a tax collector shall be prima facie evidence that a valid sale was made." Further, La. R.S. 47:2155(B) provides that "[a] certified copy of the tax sale certificate is prima facie evidence of the regularity of all matters regarding the tax sale and the validity of the tax sale." Therefore, if the tax sale purchaser presents a certified copy of the tax sale certificate, then the burden shifts to the former property owner to "prov[e] any defects in the tax adjudication proceedings." *NAR Sols., Inc. v. Kuhn,* 2022-00425, p. 4 (La. 12/9/22), 354 So.3d 1176, 1178 (quoting *Smitko v. Gulf S. Shrimp, Inc.*, 2011-2566, p. 11 (La. 7/2/12), 94 So.3d 750, 757-58).

Because ETC attached the certified copy tax sale certificate with its motion for summary judgment, the burden shifted to Defendant to establish "a genuine issue of material fact as to the validity of the tax sale." *See Lepree*, 2022-0853, p. 17, 370 So.3d at 1201. Defendant failed to do so. As noted above, the only claim Defendant asserted in opposition to the motion was that he did not receive sufficient notice under La. R.S.47:2157. He also did not provide any evidence or exhibits to otherwise rebut the validity of the tax sale. *See Precept Credit*

*Opportunities Fund, LP*, 2023-0104, p. 17, 376 So.3d at 221 (stating the "presumptive validity of a tax sale can be rebutted only by direct and positive evidence to the contrary"); *Lepree* 2022-0853, p. 17, 370 So.3d at 1202 (finding that tax sale purchaser was entitled to summary judgment where she included a copy of her tax sale certificate and the prior owner failed to submit evidence to rebut the presumption of the validity of a tax sale);[16] *see also Pamplemoussier, L.L.C. v. Poche*, 2012-1829, pp. 3-4 (La. App. 1 Cir. 9/13/13), 187 So.3d 480, 482 (holding that the tax sale purchaser was entitled to have the tax sale and tax title confirmed where the prior owner failed to introduce competent evidence to rebut the validity of the tax sale). As established earlier, however, the notice ETC provided Defendant was in compliance with the form provided in La. R.S.47:2157(A)(2). Defendant thus failed to rebut the presumption of the validity

---

[16] The *Lepree* Court stated:

> Ms. Lepree attached a certified copy of the tax deed with her Motion for Summary Judgment. This constituted prima facie evidence of the validity of the tax sale proceedings; and the burden then shifted to Ms. Fields to establish a genuine issue of material fact as to the validity of the tax sale. *See* La. Const. art. VII, § 25(A)(1); La. R.S. 47:2155(B); *NAR Sols., Inc.,* 2022-00425, p. 4, 354 So.3d at 1178; *Pamplemoussier*, 2012-1829, p. 3, 187 So.3d at 482. We find that Ms. Fields did not carry her burden. Instead, in her Opposition to Ms. Lepree's Motion for Summary Judgment, Ms. Fields merely argued that she did not receive notice of the sale of the Property and that the record was lacking proof of post-tax sale notice of her right to redeem the Property. This was insufficient to rebut the presumption of validity. *See Pamplemoussier*, 2012-1829, pp. 3-4, 187 So.3d at 482. Ms. Fields did not even attach an affidavit to her Opposition with an attestation about her alleged lack of post-sale notice; and she otherwise failed to include any exhibits and evidence to support her arguments. Rather, Ms. Fields' reliance on only the arguments of her counsel in her Opposition to Ms. Lepree's Motion for Summary Judgment was insufficient to create a genuine issue of material fact as to the validity of the tax sale deed. *See Pamplemoussier*, 2012-1829, p. 4, 187 So.3d at 482. *See also Numa C. Hero & Son, LLP Through Hero v. Brit UW Ltd.*, 2022-0405, pp. 7-8 (La. App. 4 Cir. 12/21/22), 356 So.3d 480, 484 (explaining that "[a]rgument of counsel and briefs, no matter how artful, are not sufficient to raise a genuine issue of material fact") (quoting *Attardo v. Brocato*, 1996-1170, p. 2 (La. App. 4 Cir. 2/5/97), 688 So.2d 1296, 1297). Thus, we conclude that the trial court did not err in granting Ms. Lepree's Motion for Summary Judgment.

*Lepree*, 2022-0853, p. 17, 370 So.3d at 1202.

of the tax sale. Accordingly, the trial court properly granted summary judgment in favor of ETC.

**CONCLUSION**

For the aforementioned reasons, the trial court's July 14, 2023 judgment, which denied Defendant's exception of no right of action and granted ETC's motion for summary judgment, which confirmed and quieted the tax title and declared ETC the owner of the property, is affirmed.

**AFFIRMED**